**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **MAURICE STARKS, Individually and On Behalf of All Others Similarly Situated,** | § § § | |
| | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 7:22-cv-259** |
| **v.** | § | |
| | § | |
| **TERRA OILFIELD SERVICES, LLC and TERRA-ACE INTERMEDIATE HOLDINGS, LLC dba ACE FLUID SOLUTIONS** | § § § | |
| | | |
| **Defendant** | | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Maurice Starks ("Named Plaintiff") on behalf of himself and all others similarly situated (Named Plaintiff, potential FLSA Opt-In Plaintiffs, and potential New Mexico Minimum Wage Act Class Members are collectively referred to as "Plaintiffs") brings this suit against the above-named Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as amended, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. STAT. § 50-4-19, *et seq.*, as amended. Named Plaintiff shows as follows:

### I. NATURE OF SUIT

1.     The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v.*

*Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2.      Likewise, the NMMWA requires that employees who work more than forty hours in a week be paid one and one-half their regular hourly rate for hours worked in excess of forty hours. N.M. STAT. § 50-4-22.

3.      Defendants Terra Oilfield Services, LLC and Terra-Ace Intermediate Holdings, LLC dba Ace Fluid Solutions ("Defendants" or "Terra") have violated the FLSA and the NMMWA by failing to pay their Operators, A Supervisors, and B Supervisors in their Water Transfer and Water Treatment Divisions (collectively, "Operators and Supervisors" or "Plaintiffs") in accordance with the guarantees and protections of the FLSA and the NMMWA.

4.      Specifically, Defendants have refused to pay their Operators and Supervisors (1) for all time on their jobsites; (2) for time at service stations or other locations outside of their jobsites performing compensable work; (3) for compensable time driving to and from their jobsites that falls within the continuous workday; (4) for travel that kept Plaintiffs away from home overnight ("Travel Away from Home") that is compensable under the FLSA; (5) reimbursement of their travel expenses, which further reduced their effective pay below the minimum wage or the required overtime pay; and (6) overtime pay based on the correct regular hourly rate that includes their Travel Bonuses.

5.      Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and the Defendants' compensation policies, Named Plaintiff bring this action as an opt-in collective action pursuant to 29 U.S.C. § 216(b) and as an opt-out class action under the NMMWA and Federal Rule of Civil Procedure 23.

## II. PARTIES

6.      Named Plaintiff Maurice Starks is an individual who resides in Harris County, Texas. He has consented to be a party-plaintiff in this action. His consent form is attached as Exhibit A.

7.      Defendant Terra Oilfield Services, LLC ("Terra OFS") is a Delaware for-profit limited liability company that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Conroe, Texas, and can be served with process by service on its registered agent, Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, Texas 75201.

8.      Defendant Terra-Ace Intermediate Holdings, LLC dba Ace Fluid Solutions ("Terra-Ace") is a Delaware for-profit limited liability company that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Odessa, Texas, and can be served with process by service on its registered agent, Cogency Global Inc. at 1601 Elm St., Suite 4360, Dallas, TX 75201.

### III. JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction in this matter because Named Plaintiff asserts claims arising under federal law. Specifically, Named Plaintiff asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. Named Plaintiff's NMMWA claims form part of the same case or controversy under Article III of the United States Constitution. Therefore, this Court has supplemental jurisdiction over Named Plaintiff's NMMWA claims pursuant to 28 U.S.C. §1367(a). This Court also has personal jurisdiction over all parties to this action.

10.     Venue is proper in the Midland Division of the United States District Court for the Western District of Texas. A substantial part of the events forming the basis of this suit occurred in Midland County and Ector County, Texas, which are in this District and Division. Named Plaintiff Starks performed work for Defendants, in Midland County and Ector County, Texas. Defendants are subject to this Court's personal jurisdiction with respect to this civil action. Defendants thus reside

in this district and division. 28 U.S.C. § 1391(c). Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

## IV. COVERAGE UNDER THE FLSA

11.    At all relevant times, one Defendant or the other has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12.    At all relevant times, Named Plaintiff Starks was an "employee," as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1), whom Defendant Terra OFS "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

13.    At all relevant times, Defendants' Operators and Supervisors were "employees," as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1), whom one Defendant or the other "employ[ed]" at any given time within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

14.    At all relevant times, Defendants' Operators and Supervisors, including the Named Plaintiff, were engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §207.

15.    At all relevant times, Named Plaintiff Starks was employed in an "enterprise," within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), operated by Defendant Terra OFS.

16.    At all relevant times, Defendants' Operators and Supervisors were employed in an "enterprise," within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), operated by one Defendant or the other at any given time.

17.    At all relevant times, said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

18.    At all relevant times, said enterprise has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

19.    In the performance of their work, Plaintiffs handled tools, equipment, and other materials that were manufactured outside of the State of Texas and outside of the State of New Mexico, including, for example, trucks, hoses, and gloves.

## V. COVERAGE UNDER THE NMMWA

20.    At all relevant times, one Defendant or the other has been an "employer" within the meaning of Section 50-4-21(B) of the NMMWA.

21.    At all relevant times, Named Plaintiff Starks was an "employee" within the meaning of Section 50-4-21(C) of the NMMWA, whom Defendant Terra OFS "employ[ed]" within the meaning of Section 50-4-21(A).

22.    At all relevant times, the New Mexico Class Members (defined below) were individual "employees" within the meaning of Section 50-4-21(C) of the NMMWA, and whom one Defendant or the other "employ[ed]" at any given time within the meaning of Section 50-4-21(A).

## VI. FACTUAL ALLEGATIONS

23.    Defendant Terra Oilfield Services, LLC ("Terra OFS") is an oilfield services company that provided and treated water for oilfield frac sites in Texas and New Mexico from approximately 2013 to approximately March 15, 2021.

24.    On September 6, 2019, a lawsuit was filed against Terra OFS in *Barhight v. Terra Oilfield Services, LLC*, No. 7:19-cv-00214-DC-RCG, Western District of Texas, Midland/Odessa Division ("*Barhight*"), alleging violations of the FLSA and NMMWA based on substantially the same facts as the present case.

25.     The parties to the *Barhight* action stipulated to the conditional certification of a collective action under the FLSA, and notice was sent to individuals employed as Operators and B Supervisors in Terra's Water Transfer Division between December 11, 2016 and December 11, 2019. (*See* No. 7:19-cv-00214-DC-RCG, Dkt. 30.) Following the notice, 176 individuals joined the action as opt-in plaintiffs, in addition to Named Plaintiff Barhight. The *Barhight* matter was settled, and the Court approved the settlement on July 22, 2021. (No. 7:19-cv-00214-DC-RCG, Dkt. 99.)

26.     On or about March 15, 2021, Defendant Terra-Ace Intermediate Holdings, LLC dba Ace Fluid Solutions ("Terra-Ace") acquired the assets and employees of Terra OFS.

27.     There has been a substantial continuity between the business operations of Terra OFS and Terra-Ace.

28.     Terra-Ace was made aware of the *Barhight* lawsuit prior to its acquisition of Terra OFS's assets and employees.

29.     Upon information and belief, Terra OFS does not have sufficient income or assets to provide relief directly to the Plaintiffs in this action.

30.     Consequently, under the doctrine of successor liability, Defendant Terra-Ace is liable in this matter for any violations that occurred prior to its acquisition of Terra OFS's assets and employees.

31.     Terra OFS employed Operators, A Supervisors, and B Supervisors ("Operators and Supervisors") within its Water Treatment and Water Transfer Divisions.

32.     The duties of all three positions within the Water Transfer Division included maintaining and monitoring the operation of water lines, pumps, transfer hoses, flow rates, and fuel consumption and providing periodic reports. The duties of all three positions within the Water Treatment Division included monitoring chemical levels in the water, adding chemicals as

necessary, and operating water pumps. The duties of A Supervisors and B Supervisors also included supervising Operators on their crews.

33.    Terra OFS hired Named Plaintiff Starks in August 2017 initially as an operator in its Water Transfer Division. Terra OFS subsequently promoted Starks to the position of B Supervisor, then to A Supervisor. Starks worked for Terra OFS in the Permian Basin region in West Texas and Southeastern New Mexico. Starks's employment with Terra OFS ended approximately in September 2020.

34.    Terra OFS paid Named Plaintiff Starks an hourly wage throughout his entire employment, not on a salary or fee basis, and classified him as FLSA and NMMWA non-exempt, meaning he was entitled to overtime for hours worked over forty hours per week.

35.    Terra typically credited and paid its Operators and Supervisors for working about 12 to 13 hours per day, and about 80 to 90 hours per week for weeks in which they worked all seven days.

36.    However, Terra OFS followed a policy or practice under which it usually only paid its Operators and Supervisors for a predetermined number of hours per shift, which was less than the time they actually worked.

37.    Operators and Supervisors typically worked on crews of about one to ten employees, depending on the scope of operations at a given project.

38.    Terra OFS provided company pickup trucks for the Operators and Supervisors to transport themselves, fuel, tools, equipment and work materials to and from their jobsites.

39.    The Operators and Supervisors also used the company pickups as a tool to perform their jobs.

40.    The company pickups were equipped with auxiliary tanks (also known as "drag" or "L" tanks), which the Operators and Supervisors used to fuel the water pumps they operated on their jobsites.

41.    When they were not actively working on other equipment, the Operators and Supervisors spent most of the time on their jobsites in or around the company pickup. The company pickups served as their office and shelter on their jobsites. The Operators and Supervisors typically left their company pickup trucks running throughout most or all of the duration of their shifts in order to provide air conditioning or heating, as well as electric power for devices they needed for work, such as their cell phones and company computers.

42.    The Operators and Supervisors could not perform their work safely or effectively without shelter, air conditioning, and heat due to the harsh natural conditions of their remote desert jobsites.

43.    Operators and Supervisors typically stayed at company-provided lodging—either housing on the premises of Terra OFS's yard or at a man camp or hotel. A minority of Operators and Supervisors stayed at their own home or lodging that they provided.

44.    When Operators and Supervisors stayed at lodging on or near Terra OFS's premises, they usually loaded tools, equipment, and materials needed to perform their work from Terra's yard before departing to their jobsites. For example, they would load items such as: fuel, diesel exhaust fluid (DEF), lubricants, clamps, caps, fittings, hoses, heads, layovers, gaskets, and traffic cones.

45.    When Operators and Supervisors stayed at lodging that was not on or near Terra OFS's premises, they usually they purchased fuel and any other materials needed for their work, such as DEF or lubricants, at a service station before traveling to their jobsites.

46.    Most days, the Operators and Supervisors filled both their company pickup truck's fuel tank as well as the auxiliary "drag" tank installed on the pickup.

47.    The Operators and Supervisors then traveled to the jobsite. If the crew did not stop at Terra OFS's yard or a service station to obtain fuel and supplies on their way to the jobsite, they would typically do so on the return trip at the end of their shift.

48.     The Operators' and Supervisors' travel typically took between about 30 minutes to 2.5 hours each way to and from their jobsites.

49.     On some jobs, Terra OFS required multiple Operators and Supervisors to travel together in a single company pickup in order to conserve fuel.

50.     On those occasions, one of the Operators or Supervisors was required to drive in order to transport his coworkers to and from the jobsite, in addition to transporting the fuel, tools, equipment, supplies, and the company pickup.

51.     Driving the company pickup in order to transport it to for use to perform the work on the jobsite, and to transport coworkers, fuel, tools, equipment, and supplies necessary for the work was one of the principal activities that Defendants hired the Operators and Supervisors to perform.

52.     Operators and Supervisors were required to perform inspections of the company pickup truck at the beginning and at the end of each shift either at their place of lodging, or at Terra OFS's yard, or at the service stations.

53.     Obtaining and loading fuel, tools, equipment, and work materials; transporting coworkers; and inspecting their company pickups were integral and indispensable to the Operators' and Supervisors' principal work activities that they performed on their jobsites.

54.     Nevertheless, Terra OFS followed a policy or practice of generally refusing to pay its Operators and Supervisors for travel or work tasks performed outside of their jobsites beyond the predetermined daily number of hours for which it paid them.

55.     Most of Terra OFS's Operators and Supervisors, including the Named Plaintiff, lived so far away from the Permian Basin region that they could not travel from their homes to their jobsites each day. Instead, they worked on hitches where they had a set number of days on duty followed by a set number of days where they were off duty and returned to their homes. Thus, they were

required to travel away from their homes during normal work hours to the Permian Basin region where they stayed overnight for the entirety of their hitches ("Travel Away from Home").

56.    Terra OFS followed a policy or practice under which it generally did not pay the Operators or Supervisors, including the Named Plaintiff, for their time spent in Travel Away from Home.

57.    As a result, Terra OFS refused to pay its Operators and Supervisors on many occasions for compensable work time traveling and performing preparatory and concluding tasks. This off-the-clock work occurred in many weeks in which they worked more than 40 hours, resulting in unpaid overtime.

58.    Nor did Terra OFS reimburse the Operators or Supervisors, including the Named Plaintiff, for their travel expenses, including fuel, mileage for maintenance and wear and tear on their personal vehicles, or meals.

59.    The unreimbursed travel expenses are considered deductions under the FLSA, which reduce the Operators' and Supervisors' effective hourly pay below the required overtime pay in overtime weeks and below the minimum wage in weeks where their effective hourly rate was already at or near $7.25.

60.    Terra OFS knowingly, willfully, or with reckless disregard carried out its illegal policies or practices of failing to pay overtime compensation and minimum wages to it Operators and Supervisors.

61.    Upon information and belief, Defendant Terra-Ace has continued substantially the same policies and practices described above since its acquisition of Terra OFS's assets and employees, including:

a.    Paying Operators and Supervisors only a predetermined number of hours per shift, which is less than the time they actually work and does not include their compensable travel and time spent performing compensable preparatory and concluding tasks

outside of their jobsites;

b. Refusing to pay Operators and Supervisors for "Travel Away from Home" that is compensable under the FLSA; and

c. Refusing to reimburse Operators and Supervisors for travel expenses, which reduced their pay below the required minimum wage or overtime pay.

## VII. FLSA COLLECTIVE ACTION ALLEGATIONS

62.     Under 29 U.S.C. § 216(b), Named Plaintiff Starks seeks authorization to send notice of the right to join this lawsuit to a group of similarly situated employees delineated as follows:

> **All current and former Operators, A Supervisors, and B Supervisors in Terra Oilfield Services, LLC's and Terra-Ace Intermediate Holdings, LLC's (doing business as Ace Fluid Solutions) Water Transfer and Water Treatment Divisions who were paid by the hour in the three year-period preceding the Court's entry of this Order.**

63.     Named Plaintiff and the Potential Opt-In Plaintiffs performed the same or similar job duties as one another as set forth above.

64.     Further, Named Plaintiff and the Potential Opt-In Plaintiffs were denied overtime pay and minimum wages under the same policies or practices described above. Application of those policies or practices does not depend on the personal circumstances of the Named Plaintiff or the Potential Opt-In Plaintiffs. Thus, the Potential Opt-In Plaintiffs are owed unpaid overtime and minimum wages for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

## VIII. NMMWA RULE 23 CLASS ALLEGATIONS

65.     Named Plaintiff Starks, individually and on behalf of all other similarly situated employees, pursues his NMMWA claims against Defendants on a class basis under Rule 23 of the Federal Rules of Civil Procedure.

66.     Named Plaintiff Starks seeks certification of a class under Rule 23 of the Federal Rules of Civil Procedure (the "New Mexico Class Members") as follows:

> **All current and former Operators, A Supervisors, and B Supervisors in Terra Oilfield Services, LLC's and Terra-Ace Intermediate Holdings, LLC's (doing business as Ace Fluid Solutions) Water Transfer and Water Treatment Divisions who were paid by the hour and worked in New Mexico at any time in the three year-period preceding the Court's entry of this Order.**

67.     Named Plaintiff Starks, individually and on behalf of all other similarly situated employees, seeks relief on a class basis for Defendant's policies or practices described above.

68.     Named Plaintiff and the New Mexico Class Members performed the same or similar job duties as one another as set forth above.

69.     Further, Named Plaintiff and the New Mexico Class Members were denied overtime pay and minimum wages under the same policies or practices described above. Application of those policies or practices does not depend on the personal circumstances of the Named Plaintiff or the New Mexico Class Members. Thus, the New Mexico Class Members are owed unpaid overtime and minimum wages for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

70.     Throughout the relevant period, Defendants knew that Plaintiffs and the New Mexico Class Members were not being properly compensated for all of their hours worked.

71.     Defendants policies or practices of refusing to pay the required minimum wages and overtime pay constitute a continuing course of conduct under N.M. Stat. Ann. § 50-4-32.

72.     Plaintiffs' NMMWA claims against Defendants satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements for the certification of a class action under Federal Rule of Civil Procedure 23.

73.    **Numerosity.** The class satisfies the numerosity standard because, upon information and belief, there are at least 100 New Mexico Class Members. Consequently, joinder of all New Mexico Class Members in a single action is impracticable. The data required to calculate the size of the class is within the sole control of Defendants.

74.    **Commonality.** There are questions of law and fact common to the class that predominate over any questions affecting individual members. The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

a)    Whether Defendants violated the NMMWA by paying the New Mexico Class Members only a predetermined number of hours per shift, which was less than the time they actually work on their jobsites;

b)    Whether Defendants violated the NMMWA by refusing to pay the New Mexico Class Members for their time spent performing compensable preparatory and concluding tasks outside of their jobsites;

c)    Whether Defendants violated the NMMWA by refusing to the New Mexico Class Members for compensable travel that fell within the continuous workday between their jobsites and the service stations or other locations where they performed compensable preparatory and concluding tasks;

d)    Whether Defendants violated the NMMWA by failing to include the Travel Bonus in the New Mexico Class Members' regular rates of pay for purposes of determining the appropriate overtime rate;

e)    Whether Defendants' violations of the NMMWA constituted a continuing course of conduct; and

f)    The proper measure of damages sustained by the New Mexico Class Members.

75.     **Typicality**. Named Plaintiff's claims are typical of those of the class because the Named Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the prospective New Mexico Class Members. Like the New Mexico Class Members, the Named Plaintiff was paid by the hour and regularly worked in excess of forty hours per week. Like the New Mexico Class Members, the Named Plaintiff was not compensated for compensable travel time and preparatory and concluding tasks under the same policies or practices. The other facts outlined above likewise apply equally to both Named Plaintiff and the New Mexico Class Members.

76.     **Adequacy**. Named Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the New Mexico Class Members he seeks to represent. The interests of the members of the class will be fairly and adequately protected by Named Plaintiff and the undersigned counsel, who have experience in employment and class action lawsuits.

77.     **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation of one-hundred claims or more would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendant. A single class action can determine the rights of all New Mexico Class Members in conformity with the interest of efficiency and judicial economy.

## IX. CAUSE OF ACTION ONE: FLSA

78.     During the relevant period, Defendants violated the FLSA, 29 U.S.C. §§ 206 and 207, and 215(a)(2), by employing the Named Plaintiff and the Potential Opt-In Plaintiffs, in an enterprise

engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for all of their work in excess of forty hours per week at rates no less than one-and-one-half times their regular rates for which they were employed, and for failing to pay at least the minimum wage. Defendant has acted willfully in failing to pay Plaintiffs in accordance with applicable law.

## X. CAUSE OF ACTION TWO: NMMWA

79.    During the relevant period, Defendants violated the NMMWA, N.M. Stat. Ann. § 50-4-22, by employing the Named Plaintiff and the New Mexico Class Members, for workweeks longer than 40 hours without compensating such employees for all of their work in excess of forty hours per week at rates no less than one-and-one-half times their regular hourly rate. Defendants' violation of the NMMWA occurred as part of a continuing course of conduct.

## XI. JURY DEMAND

80.    Plaintiff demands a trial by jury.

## XII. PRAYER FOR RELIEF

For the foregoing reasons, the Named Plaintiff prays for judgment against Defendants as follows:

a.    For an expedited Order authorizing notice to Potential Opt-In Plaintiffs under the FLSA, 29 U.S.C. § 216(b);

b.    For an Order certifying the NMMWA claims as a Class Action pursuant to Fed. R. Civ. P. 23, for designation of Named Plaintiff as Class Representative, and for designation of Plaintiff's counsel as class counsel;

c.    For an Order under Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendants liable for unpaid back wages due to Named Plaintiff and the Potential Opt-In

Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Named Plaintiff and the Potential Opt-In Plaintiffs;

d.      For an Order awarding Named Plaintiff and the New Mexico Class Members damages in the amount of their unpaid and in an additional amount equal to twice the unpaid wages pursuant to N.M. Stat. 50-4-26, including damages for all violations, regardless of the date on which they occurred, as a result of Defendants' continued course of conduct pursuant to N.M. Stat. Ann. 50-4-32;

e.      For an Order awarding Named Plaintiff (and the Potential Opt-In Plaintiffs and New Mexico Class Members) the taxable costs and allowable expenses of this action;

f.      For an Order awarding Named Plaintiff (and the Potential Opt-In Plaintiffs and New Mexico Class Members) attorneys' fees; and

g.      For an Order awarding Named Plaintiff (and the Potential Opt-In Plaintiffs and New Mexico Class Members) pre-judgment and post-judgment interest at the highest rates allowed by law;

h.      For an Order awarding Named Plaintiff declaratory and injunctive relief as necessary to prevent the Defendant's further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. and the New Mexico Minimum Wage Act, as amended, N.M. Stat. § 50-4-19, *et seq*.; and

i.      For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

Respectfully submitted,

**FAIR LABOR LAW**


By: _/s/ Aaron Johnson_____
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Ph: (512) 277-3254

**ATTORNEY FOR PLAINTIFF**